```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
 2
      UNITED STATES OF AMERICA,      ) Criminal Action
 3                                   ) No. 1:21-CR-46
                         Plaintiff,  )
 4                                   ) STATUS HEARING-VIA ZOOM
      vs.                            )
 5                                   ) Washington, D.C.
      PATRICK MONTGOMERY, BRADY      )
 6    KNOWLTON, GARY WILSON          ) October 6, 2023
                                     ) Time:  2:15 p.m.
 7                       Defendants.  )
      _____
 8
              TRANSCRIPT OF STATUS HEARING - VIA ZOOM
 9      HELD BEFORE THE HONORABLE JUDGE RANDOLPH D. MOSS
                  UNITED STATES DISTRICT JUDGE
10    _____

11                    A P P E A R A N C E S

12    For Plaintiff:          CAROLINA NEVIN
                              KELLY ELIZABETH MORAN
13                            United States Attorney's Office
                              601 D Street NW
14                            Washington, DC 20530

15    For Defendant           JOHN M. PIERCE
      Patrick Montgomery:     John Pierce Law, P.C.
16                            21550 Oxnard Street
                              3rd Floor
17                            Woodland Hills, CA 91367

18    For Defendant           RONALD S. SULLIVAN, JR.
      Brady Knowlton:         Ronald Sullivan Law, PLLC
19                            1300 I Street NW
                              Suite 400-E
20                            Washington, DC 20005

21                            THOMAS BRENT MAYR
                              Mayr Law, P.C.
22                            5300 Memorial Drive
                              Suite 750
23                            Houston, TX 77007

24

25
```

```
1                   A P P E A R A N C E S (CONT'D.)

2      For Defendant            AMY COLLINS
       Gary Wilson:             Price Benowitz, LLP
3                               Criminal Defense Team
                                409 7th Street NW
4                               Suite 200
                                Washington, DC 20004
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19     Court Reporter:          Tamara M. Sefranek, RMR, CRR, CRC
                                Official Court Reporter
20                              United States Courthouse, Room 6714
                                333 Constitution Avenue, NW
21                              Washington, DC  20001
                                202-354-3246
22

23

24

25
```

```
 1                        P R O C E E D I N G S

 2              THE COURTROOM DEPUTY:  Your Honor, we're on the

 3    record for Criminal Case 21-46, United States of America v.

 4    Patrick Montgomery, Brady Knowlton, and Gary Wilson.

 5              Counsel, please introduce yourselves for the record,

 6    starting with the government.

 7              MS. NEVIN:  Good afternoon, Your Honor.  Carolina

 8    Nevin and Kelly Moran for the United States.

 9              THE COURT:  Good afternoon.

10              MR. PIERCE:  Good afternoon, Your Honor.  John Pierce

11    on behalf of Defendant Patrick Montgomery, who is present here

12    by video, and consents.

13              THE COURT:  Good afternoon.

14              MR. SULLIVAN:  Ronald Sullivan, Your Honor, here with

15    Brent Mayr, on behalf of Brady Knowlton, who was here -- oh, I

16    see.  I'm sorry, Your Honor -- who is present on video and

17    consents as well.

18              THE COURT:  All right.  Thank you.

19              MS. COLLINS:  Good afternoon, Your Honor.  Amy

20    Collins on behalf of Gary Wilson, who is present via Zoom.

21              THE COURT:  All right.  I just want to confirm that

22    each of the defendants consents to proceed today by Zoom.  So,

23    Mr. Pierce, you want to address that as to Mr. Montgomery?

24              MR. PIERCE:  Yes, Your Honor.  Yes, Mr. Montgomery

25    does consent to appear today by Zoom.
```

```
1              THE COURT:  All right.  And, Mr. Sullivan, as to
2      Mr. Knowlton?
3              MR. SULLIVAN:  Yes.
4              THE COURT:  Okay.  And, Ms. Collins, as to
5      Mr. Wilson?
6              MS. COLLINS:  Yes, Your Honor.  And Mr. Wilson filed
7      a waiver, I believe, a week or two ago as to this issue as
8      well.
9              THE COURT:  Okay.  I thought you had said a second
10     ago he was here.  Is he not here?
11             MS. COLLINS:  He is here, Your Honor.  But the waiver
12     was for if he had to be in person and in case -- in the case
13     that he couldn't make it remotely for whatever reason.
14             THE COURT:  Okay.  Great.  Thank you.
15             All right.  So we're here just for a status
16     conference, but also I had some questions about a couple of the
17     pending motions.
18             And let me say, if the parties feel that it's
19     necessary to have argument on any of the other motions, you
20     should let me know today so we can schedule that.  I don't
21     think it's necessary, but I'd be happy to hear from you if you
22     think it is.
23             So let me start with Docket 150, which is
24     Mr. Montgomery's motion to dismiss the superseding indictment
25     for unconstitutional retaliation.  And as to this one,
```

1    Mr. Pierce, I had just, sort of, a fundamental factual question

2    about it, because, as I understand it, the motion is premised

3    on the notion that the government has retaliated against

4    Mr. Montgomery for having refused to enter into a plea

5    agreement and that, because he refused to enter into a plea

6    agreement, the government filed additional charges against him.

7         But as I understand the facts, the government filed

8    the additional charges against him before he rejected the plea.

9    And so I guess the question for you is, is that factually

10   correct?  And, if so, is there still a motion here?

11        MR. PIERCE:  Yes, Your Honor.  So as Your Honor

12   knows, I and my firm were not involved, sort of, back at that

13   time frame.  So I looked at that much more closely today after

14   reading the government's opposition, and you are correct, Your

15   Honor, in that all of the charges were, in fact, pending at the

16   time that the plea negotiations took place.  So that was a

17   factual inaccuracy on our part.

18        We would -- we would still -- we would still keep the

19   motion live, though, and would have it on the basis that it's

20   also set forth in there, to some extent at least, that simply

21   the fact of, sort of, piling on additional charges from the

22   beginning, you know, following the initial couple misdemeanors,

23   we believe would still be vindictive and retaliatory

24   prosecution since Mr. Montgomery did decide to mount a defense

25   and not proceed with immediate plea negotiations and whatnot.

1          So, yes, Your Honor, you're correct.  But for the

2     record and for purposes of appeal, we would like to still have

3     the motion addressed, ruled on.

4          THE COURT:  I just want to make sure I understand the

5     basis for the motion.  The motion is that the government piled

6     on charges before there were plea negotiations because Mr. --

7          MR. PIERCE:  Yeah.  Because, essentially -- there are

8     a lot of instances in these cases, Your Honor, where

9     individuals very quickly, sort of, so to speak, fold very

10    quickly and come to the government and immediately cut plea

11    deals, and Mr. Montgomery did not do that.  You know, we feel

12    that, you know, the -- kind of the -- going from two, I

13    believe, misdemeanors to ten counts with, potentially, decades

14    in prison, you know, we believe, is the basis for the motion at

15    this point, Your Honor.

16         THE COURT:  Let me make sure that I'm understanding

17    it correctly then.  It's because he didn't plead to the

18    indictment, that's what he's -- the retaliating against is not

19    pleading to the indictment; because I take it that the plea

20    offer came later in time?

21         MR. PIERCE:  Yes, that's correct, Your Honor.

22         THE COURT:  All right.  Does the government want to

23    respond?

24         MS. MORAN:  No, Your Honor, except insofar as the

25    first indictment filed in this case did contain the 1512

1    charge.  So that's the government's position, and I think we

2    can rely on our papers.

3              THE COURT:  All right.  I'm going to go ahead and

4    deny the motion at Docket 150.

5              I think the motion was, when filed, based on just a

6    factual misconception and was based on the notion that the

7    government added the additional charges after Mr. Montgomery

8    rejected the plea; and, in fact, the plea that he was offered

9    was to the 1512(c) charge.  So, factually, the basis for the

10   motion is just mistaken.

11             And to the extent that Mr. Pierce has refined the

12   motion, one is I think that that motion is untimely.  But even

13   on the merits and to the extent that it's hinted at in the

14   earlier motion, I think it fails on the law, in any event.

15             As the Supreme Court has observed, federal courts

16   have long recognized that enforcement of the nation's criminal

17   laws is in the "special province" of the executive.  And that's

18   *United States v. Armstrong*.

19             Prosecutors, obviously, have broad discretion to

20   enforce the law, and their decisions are presumed to be proper

21   absent clear evidence to the contrary.  And that's *United*

22   *States v. Slatten* at 865 F.3d 767 at 799.

23             That discretion is not entirely without limits,

24   though.  The due process clause of the Fifth Amendment does

25   protect a criminal defendant from vindictive prosecution and

1    prohibits prosecutors from upping the ante by filing increased

2    charges in order to retaliate against a defendant for

3    exercising a legal right.  And that, again, is from the *Slatten*

4    case from the D.C. Circuit, and quoting *Blackledge v. Perry*

5    from the Supreme Court.

6         For someone to succeed on a vindictive prosecution

7    argument, the defendant has to show "that the increased charge

8    was brought solely to penalize him and could not be justified

9    as a proper exercise of prosecutorial discretion."  That is

10   also a quote, still, from the *Slatten* decision.

11        A defendant can make a showing of vindictive

12   prosecution in one of two ways.  First, the defendant can offer

13   actual -- evidence of actual vindictiveness by offering

14   objective evidence that a prosecutor acted in order to punish

15   him for standing on his legal rights.  And that's *United*

16   *States v. Meyer*, 810 F.2d 1242 at 1245, from the D.C. Circuit.

17        And, alternatively, a defendant can "rely on a

18   presumption of vindictiveness" when the facts indicate a

19   "realistic likelihood of vindictiveness."  That is, when the

20   facts indicate that the "second indictment was more likely than

21   not attributable to the vindictiveness on the part of the

22   government."  That's *United States v. Meadows*, 867 F.3d 1305 at

23   1311 from the D.C. Circuit.

24        If a defendant offers evidence sufficient to support

25   a presumption of vindictiveness, at that point in time the

1   burden shifts to the government to come forward with objective

2   evidence that its motivation in charging the defendant was

3   lawful.  And then if the government produces that evidence and

4   carries its burden, the burden then shifts back to the

5   defendant.  And at that point, the defendant must prove that

6   the justification is pretextual and that the actual

7   vindictiveness has occurred.

8           There's no evidence here at all of actual

9   vindictiveness, nor is there evidence that would give rise to a

10  presumption of vindictiveness here.  As noted, the government

11  had already filed the indictment, which included the 1512(c)

12  count in it before the plea discussions took place and before

13  the plea offer was rejected, and so one cannot possibly infer

14  that that charge was added in vindictiveness for

15  Mr. Montgomery's refusal to accept the plea.  The timeline

16  simply doesn't map on to that.

17          And with respect to Mr. Pierce's argument that the

18  government was acting vindictively simply because

19  Mr. Montgomery didn't immediately plead guilty to the

20  information or complaint in the case, I don't think that comes

21  close to satisfying the standards for giving rise to a

22  presumption of vindictiveness.

23          That is a rare occurrence when somebody without a

24  plea offer simply pleads to the charging instrument, and

25  there's no reason in the world here to think that the

1    government would have expected Mr. Montgomery to do so or,

2    indeed, that it was sufficiently disappointed that he didn't

3    simply sua sponte plead to the original charging instrument,

4    that it decided to charge him with more severe charges simply

5    in vindictiveness.

6        I think that the evidence, instead, is pretty clear

7    that in this case, as in many of these cases, the government

8    brought initial charges while it was continuing to investigate

9    the barrage of cases that it was dealing with and then,

10    subsequently, went to the grand jury and obtained an indictment

11    from the grand jury, which included the 1512(c).

12        So for all those reasons, the Court concludes that

13    Docket 150, Montgomery's motion to dismiss the superseding

14    indictment for unconstitutional retaliation, should be and

15    hereby is denied.

16        The next one up that I have on my list is Docket 151,

17    which is the defendant's motion to dismiss Count 10, which is

18    the Section 1512(c) count.  And I, obviously, have already

19    denied a motion to dismiss the Section 1512(c) count.  To the

20    extent that this motion is simply brought to preserve whatever

21    rights the defendants want to preserve with respect to appeal,

22    that is preserved, and they're welcome to raise on appeal any

23    issue that they would like with respect to my prior decision

24    involving 1512(c).  And I think that, in any event, it is

25    preserved.

1          This motion itself focuses on the word corruptly and

2     the meaning of the word corruptly.  To the extent that the

3     motion suggests that the 1512(c) count should be dismissed

4     because of vagueness or ambiguity in the word corruptly, I

5     think that that is something that I dealt with in my earlier

6     opinion, but also that the D.C. Circuit dealt with in

7     *U.S. v. Fischer* and the combination, I think, of Judge Pan and

8     Judge Walker's opinions, I think, take that issue on directly.

9          To the extent that this motion is really directed at

10    what the word corruptly should mean and what definition I

11    should apply, I think that is a fair point and something that

12    I'm open to hear from the parties about.  And I know that there

13    is at least one -- and probably more than one -- case that is

14    currently pending in the D.C. Circuit that seeks to further

15    wrestle with whether Judge Walker's definition of corruptly is

16    controlling or whether some other definition of corruptly

17    should control.

18         The -- I'm not sure -- I don't think that provides a

19    basis for dismissing Section 1512(c) -- the 1512(c) count.  And

20    I'm happy to take that up with the parties either in the

21    context of jury instructions, if the case goes to a jury trial,

22    and figuring out what the jury instructions should say on this,

23    or if it's a bench trial on this question, what standard I

24    should apply for purposes of the bench trial.

25         But let me ask, before moving on from Docket 151,

1   whether there's anything that I've missed here that the parties

2   would address, or is my summary of where we stand fair with

3   respect to the 1512(c) issue and the word corruptly?  Why don't

4   I start with Mr. Pierce.

5          MR. PIERCE:  Yes, Your Honor.  I believe Mr. Mayr is

6   going to handle discussion of this for the defendants, Your

7   Honor, if that's okay.

8          THE COURT:  That's fine.  Mr. Mayr?

9          MR. MAYR:  Thank you, Your Honor.  I'm glad to hear

10  that the Court is on the same page that we are in terms of part

11  of it is preserving error, part of it is that this will -- that

12  some of this will also be discussed further and considered by

13  the Court when we actually get to either our jury trial or a

14  bench trial to consider the application of the law.

15         We simply amend- -- we simply filed this supplemental

16  motion just out of an abundance of caution since we had only

17  advocated for one interpretation of corruptly before the

18  Court's original consideration of this issue and the issuance

19  of its opinion.

20         So we just -- I always worry about an appellate court

21  later on down the road saying, but this argument was never

22  presented to the trial court.  And so I just wanted -- I felt

23  like, out of an abundance of caution -- we all felt, out of an

24  abundance of caution, that we needed to raise it in the context

25  of the motion to dismiss as well.

1              But the Court is certainly correct, we will be

2    revisiting this when it comes time to asking for consideration

3    of the application of the law to the facts.  So that -- I don't

4    think I have anything further to add beyond that.

5              THE COURT:  All right.  Any other defense counsel

6    want to add anything to Mr. Mayr?

7              All right.  Does the government have anything they

8    want to add on this issue?

9              MS. NEVIN:  No, Your Honor.

10              THE COURT:  All right.  So I will then, in light of

11    all this, deny defendants' motion to dismiss Count 10 for the

12    reasons I've previously provided, as well as the reasons

13    provided by the D.C. Circuit in *United States v. Fischer*.  But

14    I do recognize that there is a question which I will have to

15    decide in the future with respect to either what definition of

16    corruptly I should apply or that a jury should apply.

17              Is there anything else that the parties want to add

18    with respect to the motion to change venue?  I'll defer to the

19    defense if there's one person who would like to speak, or if

20    you would all like to speak on that question.

21              MR. SULLIVAN:  Your Honor, this is Ron Sullivan.  I'm

22    going to handle that one.

23              We're, of course, ready to answer any questions the

24    Court may have; otherwise, we are prepared to rely on the

25    papers at this point.

1          THE COURT:  All right.  Well, let me ask if the

2     government has anything else it wants to add on this.

3          MS. NEVIN:  We don't, Your Honor.

4          THE COURT:  All right.  Well, I am -- will issue an

5     order on this.  I want to go back and look a little bit further

6     at the surveys that were submitted.  I mean, as you all know,

7     this is an issue which, in one form or another, has been

8     addressed by many judges on this court; Judge Kelly, Judge

9     Bates, Judge Berman Jackson, Judge McFadden, Chief Judge

10    Howell -- or then-Chief Judge Howell, Judge Mehta, Judge

11    Chutkan, Judge Lamberth.

12          I addressed a slightly different version of it; Judge

13    Contreras, Judge Friedrich, and all the judges that have

14    considered this issue thus far have concluded that there's not

15    a basis for change of venue and that the jury selection process

16    provides sufficient basis for identifying any potential

17    prejudice that might exist in excluding any jurors who may have

18    had particular contact or connection to the events of

19    January 6th.

20          But I will -- I will give this a more careful look,

21    and then I'll just enter an order promptly dealing with this

22    issue.

23          I'll note that, in addition to my opinion in the

24    *Bochene* case on this issue, I did also address it from the

25    bench in the *Vargas Santos* case.  But there's further

1    examination to make sure that I, along with all my colleagues,

2    have been right on this issue, so I will give that one a little

3    bit further look.

4           I had a couple of questions on 154, which was, again,

5    Mr. Pierce, your motion to dismiss on First Amendment grounds.

6    And my first question is, I think the substance of the motion,

7    as I read it, is directed at 18 U.S.C. Section 1752(c) and

8    40 U.S.C. Section 5104(e).

9           And I just wanted to clarify whether you're seeking

10    to dismiss just those counts on First Amendment grounds or

11    whether you're seeking to dismiss the entire third superseding

12    indictment on those grounds.  If the latter, if you can point

13    me to where that's presented in the briefing.

14           MR. PIERCE:  No, Your Honor.  You're correct with

15    respect to the former.

16           THE COURT:  Okay.  So in dealing with this motion

17    then, I will concentrate just on 1752(c) and 5104(e).

18           And then the other question I had related to this is

19    that there's a portion of your briefing which doesn't appear to

20    be directed at the First Amendment analysis, but is directed at

21    what law the Court should look to for purposes of determining

22    whether there was a violation of those two statutes.  And, in

23    particular, I think you suggest looking to state law trespass

24    statutes which require both subjective notice, as well as

25    objective knowledge of the restriction.

1          And to the extent that is the argument that you're

2     raising, I just wanted to confirm that that also is something

3     that isn't really a basis for dismissing any portion of the

4     indictment; but, again, something that would go to jury

5     instructions or the standard that I should apply if I'm,

6     ultimately, the trier of fact?

7          MR. PIERCE:  Yes.  That's correct, Your Honor.

8          THE COURT:  Okay.  So to the extent the motion in 154

9     addresses the standard that should apply for determining

10    whether there's been a violation of either of those two

11    statutes, I will deny that on the grounds that it's not -- it

12    doesn't provide a basis for dismissing the indictment but,

13    instead, is a matter that the Court can and will take up in the

14    context of preparing jury instructions or deciding what

15    standard I should apply.

16         And then I will get back to you-all relatively

17    promptly with a decision with respect to whether the counts

18    that are premised on 1752(c) and 5104(e) should be dismissed on

19    First Amendment grounds.

20         The next one up, I think, is Mr. Wilson's motion to

21    suppress.  And, Ms. Collins, is there anything that you want to

22    say about that motion?

23         MS. COLLINS:  No, Your Honor.  I think at this point

24    we would just ask that you rely on what we've provided in our

25    briefings.  Unless, of course, Your Honor has any questions,

1    then we're more than happy to answer those.

2              THE COURT:  Well, I take it from what you've just

3    said, you're not expecting or don't think there's a need for a

4    factual hearing with respect to this motion?

5              MS. COLLINS:  Not at least -- I think our take is

6    that there's not, but the government might have a different

7    take on it.

8              THE COURT:  Ms. Nevin?

9              MS. NEVIN:  We don't believe there's a need for a

10   hearing on this, Your Honor.

11             THE COURT:  Well, I will then take it up based on the

12   papers.

13             With respect to Mr. Montgomery's motion to dismiss

14   based on spoliation and the *Brady* violation -- or an alleged

15   *Brady* violation, as I understand it, this motion is premised on

16   evidence that was possessed by and not maintained by the

17   U.S. House of Representatives Select Committee to investigate

18   the January 6th attacks; is that correct?  Mr. Pierce?

19             MR. PIERCE:  Yes, Judge.  Yes, Your Honor.

20             THE COURT:  Is there any authority, Mr. Pierce, that

21   supports the proposition that a coordinate branch of government

22   has preservation obligations and that *Brady* extends to an

23   entirely separate branch of government?

24             I know that there's disputes in litigation about the

25   extent to which *Brady* applies to different law enforcement

1    agencies in the executive branch and if something is in the

2    possession of the ATF, but it's the FBI that investigated the

3    crime, does it apply, but I've never heard of it or any

4    suggestion that it would apply to an entirely separate branch

5    of government.

6              I don't know, frankly, how the executive branch would

7    be able to do anything about that because they have no power to

8    tell Congress what to do or what not to do.

9              MR. PIERCE:  Yes, Your Honor.  So my understanding

10   from the last email exchange -- and I'm sorry about this,

11   but -- was that today we were just focusing on 150, 151, and

12   153, I believe.  So I did not go back and review that in

13   detail.

14             But I'd be happy to submit something supplemental to

15   that effect, if that would be helpful.

16             THE COURT:  I mean, I think I can just rely on the

17   papers.  I just --

18             MR. PIERCE:  We would be happy to rely on the papers,

19   Your Honor.

20             THE COURT:  Okay.

21             MR. PIERCE:  But we'll also double-check that.

22             THE COURT:  All right.  Ms. Nevin, anything the

23   government wants to add on this one?

24             MS. NEVIN:  Your Honor, it was our position -- and we

25   filed an opposition based on the fact that this was filed, I

1    think, like, 30 days late.  So if Your Honor would like us to

2    respond on the merits, we certainly will do so.  Is that what

3    the Court prefers?

4            THE COURT:  Well, Mr. Pierce, was there a reason for

5    filing this late and some justification for filing it outside

6    of the time limits?

7            MR. PIERCE:  You know, I would have to go back and

8    double-check that, Your Honor, but -- and I could be wrong

9    about this, but off the top of my head, I believe it maybe is

10   because the course of events with respect to what came out

11   about the -- the House Select Committee occurred later than

12   that.

13           You know, there's a Fox News appearance by

14   Congressman Loudermilk.  I don't have the dates right at the

15   tip of my frontal cortex with respect to the deadlines right

16   now.  I'm sorry about that.  But that's my -- that would be my

17   suspicion as to why that was.

18           MS. NEVIN:  Your Honor, we addressed that in our

19   response, which is ECF 172.  And, basically, our argument was

20   that's not an extraordinary circumstance, which the Court

21   stated in its minute order it would only allow late filings or

22   changes in deadlines based on extraordinary circumstances.

23           THE COURT:  All right.  I have to say, I'm concerned

24   about the late filing, but I also suspect that the motion, in

25   any event, is just not meritorious.

1      Because, as I said, I had never heard of any

2    suggestion that *Brady* extends to an entirely separate branch of

3    government.

4          Mr. Pierce, is there any argument here that the

5    executive branch did anything in any way to encourage the

6    destruction of the evidence?

7          MR. PIERCE:  Not at this time, we haven't put that

8    forth, Your Honor.

9          THE COURT:  All right.  Well, Ms. Nevin, I don't know

10   whether I'm going to rule on timeliness grounds or on the

11   merits, but if you would like to file a short response on the

12   merits, I'll allow you to do that.  Just tell me how much time

13   you would like.

14         MS. NEVIN:  Can you give us until Friday, Judge?

15         THE COURT:  A week from today?

16         MS. NEVIN:  Yes.

17         THE COURT:  That's fine.  If you want to file

18   anything on the merits from -- a week from today, that would be

19   fine.

20         As I said, I don't mean to suggest that I'm going to

21   conclude that it's timely, but I'd just as soon take it up once

22   and decide both those issues together.

23         MS. NEVIN:  I understand.

24         THE COURT:  All right.  So those were the issues that

25   I had on my agenda for today.

 1          Is there anything else that you-all want to raise

 2    today or anything else where you would request that I schedule

 3    some further time for oral argument?

 4          MS. NEVIN:  Your Honor, we're not requesting oral

 5    argument, but the Court has not yet ruled on 152, which is the

 6    motion to dismiss the 1752 counts.  And if we do, indeed,

 7    proceed with a stipulated trial, that may be one of the counts

 8    that would be involved.  So we would request a ruling on that,

 9    Judge.

10          THE COURT:  Yes, I intend to.  I'll get you a ruling

11    on that promptly.

12          MS. NEVIN:  Okay.

13          THE COURT:  That was on my list.  I think I asked

14    Mr. Pierce about his position on those motions.

15          MS. NEVIN:  Great.  Thank you.

16          THE COURT:  Okay.  Mr. Pierce, anything else you want

17    to raise today?

18          MR. PIERCE:  Not on behalf of Defendant Montgomery at

19    this time, Your Honor.

20          THE COURT:  All right.  Mr. Sullivan, anything else?

21          MR. SULLIVAN:  No, Your Honor.

22          THE COURT:  Mr. Mayr?

23          MR. MAYR:  Your Honor, just really briefly.  I just

24    wanted to inform the Court, after our last status hearing I

25    reached out to the probation department to inquire about

1    that -- the time it would take them to provide their pre-plea

2    PSR calculation.  And I provided them with additional

3    information.

4          Essentially, the government has indicated that they

5    would only move forward on certain counts, and so rather than

6    do calculations for every count against every defendant, we

7    provided that information to the probation department, which

8    they appreciated, because that will, hopefully, make it a

9    little bit easier for them to get back to us with a presentence

10   PSR -- I'm sorry -- a pre-plea PSR calculation.  I just wanted

11   to let the Court know about that.

12         THE COURT:  I appreciate that.  I think that is wise,

13   and I'm sure the probation office appreciates it as well.

14         All right.  And, Ms. Collins, anything else?

15         MS. COLLINS:  Not at this time, Your Honor.  Thank

16   you.

17         THE COURT:  All right.  Thank you, then.  I will get

18   you decisions on the issues that I mentioned.

19         And do we have a further status conference or a next

20   check-in scheduled at this point?

21         MS. NEVIN:  We don't, Judge.

22         THE COURT:  Maybe we should put something on the

23   calendar so we know where we're going.  I think that I'm going

24   to be able to get you a decision in the next couple of weeks,

25   hopefully even sooner than that, on these pending matters.

1          So you tell me when you-all think it would be helpful

2     to have a status after that.  Assume two weeks from now for the

3     decisions from me, even though it may be sooner.  And then tell

4     me how much time you want to confer amongst yourselves, and

5     then we can have a further status.

6          MS. NEVIN:  Sure.  We can do that, Your Honor.

7     Should we email your clerk?

8          THE COURT:  I was going to suggest we put something

9     on now, but if you'd rather talk amongst yourselves --

10          MS. NEVIN:  Of course.

11          THE COURT:  -- that's fine too.

12          Mr. Mayr, it seems to me you've been quarterbacking

13     the timing question with respect to whether there's going to be

14     a jury trial or a stipulated trial.  So maybe you're the one to

15     address this question.

16          MR. MAYR:  I like to think of myself more as a

17     fullback, Your Honor, but I'll take that designation.

18          I think we have been -- we've been very good at

19     communicating with the government; the government has been good

20     at communicating with us.  I think, once we get your rulings

21     and once we see something from the probation department, we

22     could probably schedule something pretty quickly.

23          I mean, if we need to put something on the calendar

24     for right now, I think a Friday, maybe sometime in November.

25     At the same time, we could also wait and just let the Court

1    know by emailing chambers that we need -- within the next week

2    or so, we need a status conference.

3                THE COURT:  Why don't I do this --

4                MS. NEVIN:  Sorry.

5                THE COURT:  I was going to suggest a joint status

6    report in about a month.  Does that make sense?

7                MR. MAYR:  That sounds good.

8                MS. NEVIN:  Sure.

9                THE COURT:  So I'll just direct that the parties file

10   a joint status report with the Court on or before the 3rd of

11   November.  And if you tell me at that time you want to come in

12   and meet, that would be great; or if you tell me that you need

13   some more time to confer amongst yourselves, that's fine too.

14                All right.  Well, thank you all.  Have a nice

15   weekend.

16                MR. MAYR:  Thank you Your Honor.

17                MR. SULLIVAN:  Thank you, Your Honor.

18                MR. PIERCE:  Thank you, Your Honor.

19                MS. COLLINS:  Thank you, Your Honor.

20                (The hearing adjourned at 2:53 p.m.)

21

22

23

24

25

1                CERTIFICATE OF OFFICIAL COURT REPORTER

2

3          I, TAMARA M. SEFRANEK, do hereby certify that the

4     above and foregoing constitutes a true and accurate transcript

5     of my stenographic notes and is a full, true and complete

6     transcript of the proceedings to the best of my ability.

7               Dated this 31st day of October, 2023.

8

9                         /s/ Tamara M. Sefranek_____
                          Tamara M. Sefranek, RMR, CRR, CRC
10                        Official Court Reporter
                          Room 6714
11                        333 Constitution Avenue, N.W.
                          Washington, D.C.  20001

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## /

**/s** [1] - 25:9

## 1

**10** [2] - 10:17, 13:11
**1242** [1] - 8:16
**1245** [1] - 8:16
**1300** [1] - 1:19
**1305** [1] - 8:22
**1311** [1] - 8:23
**150** [4] - 4:23, 7:4, 10:13, 18:11
**151** [3] - 10:16, 11:25, 18:11
**1512** [1] - 6:25
**1512(c** [8] - 7:9, 9:11, 10:18, 10:19, 11:3, 11:19, 12:3
**1512(c)** [2] - 10:11, 10:24
**152** [1] - 21:5
**153** [1] - 18:12
**154** [2] - 15:4, 16:8
**172** [1] - 19:19
**1752** [1] - 21:6
**1752(c** [3] - 15:7, 15:17, 16:18
**18** [1] - 15:7
**1:21-CR-46** [1] - 1:3

## 2

**200** [1] - 2:4
**20001** [2] - 2:21, 25:11
**20004** [1] - 2:4
**20005** [1] - 1:20
**202-354-3246** [1] - 2:21
**2023** [2] - 1:6, 25:7
**20530** [1] - 1:14
**21-46** [1] - 3:3
**21550** [1] - 1:16
**2:15** [1] - 1:6
**2:53** [1] - 24:20

## 3

**30** [1] - 19:1
**31st** [1] - 25:7
**333** [2] - 2:20, 25:11
**3rd** [2] - 1:16, 24:10

## 4

**40** [1] - 15:8
**400-E** [1] - 1:19
**409** [1] - 2:3

## 5

**5104(e** [1] - 16:18
**5104(e)** [2] - 15:8, 15:17
**5300** [1] - 1:22

## 6

**6** [1] - 1:6
**601** [1] - 1:13
**6714** [2] - 2:20, 25:10
**6th** [2] - 14:19, 17:18

## 7

**750** [1] - 1:22
**767** [1] - 7:22
**77007** [1] - 1:23
**799** [1] - 7:22
**7th** [1] - 2:3

## 8

**810** [1] - 8:16
**865** [1] - 7:22
**867** [1] - 8:22

## 9

**91367** [1] - 1:17

## A

**ability** [1] - 25:6
**able** [2] - 18:7, 22:24
**absent** [1] - 7:21
**abundance** [3] - 12:16, 12:23, 12:24
**accept** [1] - 9:15
**accurate** [1] - 25:4
**acted** [1] - 8:14
**acting** [1] - 9:18
**Action** [1] - 1:2
**actual** [4] - 8:13, 9:6, 9:8
**add** [6] - 13:4, 13:6, 13:8, 13:17, 14:2, 18:23
**added** [2] - 7:7, 9:14
**addition** [1] - 14:23
**additional** [5] - 5:6, 5:8, 5:21, 7:7, 22:2
**address** [4] - 3:23, 12:2, 14:24, 23:15
**addressed** [4] - 6:3, 14:8, 14:12, 19:18
**addresses** [1] - 16:9
**adjourned** [1] - 24:20
**advocated** [1] - 12:17

**afternoon** [5] - 3:7, 3:9, 3:10, 3:13, 3:19
**agencies** [1] - 18:1
**agenda** [1] - 20:25
**ago** [2] - 4:7, 4:10
**agreement** [2] - 5:5, 5:6
**ahead** [1] - 7:3
**alleged** [1] - 17:14
**allow** [2] - 19:21, 20:12
**alternatively** [1] - 8:17
**ambiguity** [1] - 11:4
**amend** [1] - 12:15
**Amendment** [5] - 7:24, 15:5, 15:10, 15:20, 16:19
**AMERICA** [1] - 1:2
**America** [1] - 3:3
**AMY** [1] - 2:2
**Amy** [1] - 3:19
**analysis** [1] - 15:20
**answer** [2] - 13:23, 17:1
**ante** [1] - 8:1
**appeal** [3] - 6:2, 10:21, 10:22
**appear** [2] - 3:25, 15:19
**appearance** [1] - 19:13
**appellate** [1] - 12:20
**application** [2] - 12:14, 13:3
**applies** [1] - 17:25
**apply** [9] - 11:11, 11:24, 13:16, 16:5, 16:9, 16:15, 18:3, 18:4
**appreciate** [1] - 22:12
**appreciated** [1] - 22:8
**appreciates** [1] - 22:13
**argument** [9] - 4:19, 8:7, 9:17, 12:21, 16:1, 19:19, 20:4, 21:3, 21:5
**Armstrong** [1] - 7:18
**assume** [1] - 23:2
**ATF** [1] - 18:2
**attacks** [1] - 17:18
**Attorney's** [1] - 1:13
**attributable** [1] - 8:21
**authority** [1] - 17:20
**Avenue** [2] - 2:20, 25:11

## B

**barrage** [1] - 10:9

**based** [6] - 7:5, 7:6, 17:11, 17:14, 18:25, 19:22
**basis** [9] - 5:19, 6:5, 6:14, 7:9, 11:19, 14:15, 14:16, 16:3, 16:12
**Bates** [1] - 14:9
**BEFORE** [1] - 1:9
**beginning** [1] - 5:22
**behalf** [4] - 3:11, 3:15, 3:20, 21:18
**bench** [2] - 11:23, 11:24, 12:14, 14:25
**Benowitz** [1] - 2:2
**Berman** [1] - 14:9
**best** [1] - 25:6
**beyond** [1] - 13:4
**bit** [3] - 14:5, 15:3, 22:9
**Blackledge** [1] - 8:4
**Bochene** [1] - 14:24
**BRADY** [1] - 15:5
**Brady** [8] - 1:18, 3:4, 3:15, 17:14, 17:15, 17:22, 17:25, 20:2
**branch** [7] - 17:21, 17:23, 18:1, 18:4, 18:6, 20:2, 20:5
**Brent** [1] - 3:15
**BRENT** [1] - 1:21
**briefing** [2] - 15:13, 15:19
**briefings** [1] - 16:25
**briefly** [1] - 21:23
**broad** [1] - 7:19
**brought** [3] - 8:8, 10:8, 10:20
**burden** [3] - 9:1, 9:4

## C

**CA** [1] - 1:17
**calculation** [2] - 22:2, 22:10
**calculations** [1] - 22:6
**calendar** [2] - 22:23, 23:23
**cannot** [1] - 9:13
**careful** [1] - 14:20
**CAROLINA** [1] - 1:12
**Carolina** [1] - 3:7
**carries** [1] - 9:4
**Case** [1] - 3:3
**case** [10] - 4:12, 6:25, 8:4, 9:20, 10:7, 11:13, 11:21, 14:24, 14:25
**cases** [3] - 6:8, 10:7, 10:9

**caution** [3] - 12:16, 12:23, 12:24
**certain** [1] - 22:5
**certainly** [2] - 13:1, 19:2
**CERTIFICATE** [1] - 25:1
**certify** [1] - 25:3
**chambers** [1] - 24:1
**change** [2] - 13:18, 14:15
**changes** [1] - 19:22
**charge** [5] - 7:1, 7:9, 8:7, 9:14, 10:4
**charges** [9] - 5:6, 5:8, 5:15, 5:21, 6:6, 7:7, 8:2, 10:4, 10:8
**charging** [3] - 9:2, 9:24, 10:3
**check** [3] - 18:21, 19:8, 22:20
**check-in** [1] - 22:20
**Chief** [2] - 14:9, 14:10
**Chutkan** [1] - 14:11
**Circuit** [6] - 8:4, 8:16, 8:23, 11:6, 11:14, 13:13
**circumstance** [1] - 19:20
**circumstances** [1] - 19:22
**clarify** [1] - 15:9
**clause** [1] - 7:24
**clear** [2] - 7:21, 10:6
**clerk** [1] - 23:7
**close** [1] - 9:21
**closely** [1] - 5:13
**colleagues** [1] - 15:1
**COLLINS** [8] - 2:2, 3:19, 4:6, 4:11, 16:23, 17:5, 22:15, 24:19
**Collins** [4] - 3:20, 4:4, 16:21, 22:14
**COLUMBIA** [1] - 1:1
**combination** [1] - 11:7
**Committee** [2] - 17:17, 19:11
**communicating** [2] - 23:19, 23:20
**complaint** [1] - 9:20
**complete** [1] - 25:5
**concentrate** [1] - 15:17
**concerned** [1] - 19:23
**conclude** [1] - 20:21
**concluded** [1] - 14:14
**concludes** [1] - 10:12
**confer** [2] - 23:4, 24:13

conference [3] - 4:16, 22:19, 24:2
confirm [2] - 3:21, 16:2
Congress [1] - 18:8
Congressman [1] - 19:14
connection [1] - 14:18
consent [1] - 3:25
consents [3] - 3:12, 3:17, 3:22
consider [1] - 12:14
consideration [2] - 12:18, 13:2
considered [2] - 12:12, 14:14
constitutes [1] - 25:4
Constitution [2] - 2:20, 25:11
CONT'D [1] - 2:1
contact [1] - 14:18
contain [1] - 6:25
context [3] - 11:21, 12:24, 16:14
continuing [1] - 10:8
contrary [1] - 7:21
Contreras [1] - 14:13
control [1] - 11:17
controlling [1] - 11:16
coordinate [1] - 17:21
correct [8] - 5:10, 5:14, 6:1, 6:21, 13:1, 15:14, 16:7, 17:18
correctly [1] - 6:17
corruptly [9] - 11:1, 11:2, 11:4, 11:10, 11:15, 11:16, 12:3, 12:17, 13:16
cortex [1] - 19:15
counsel [2] - 3:5, 13:5
count [6] - 9:12, 10:18, 10:19, 11:3, 11:19, 22:6
Count [2] - 10:17, 13:11
counts [6] - 6:13, 15:10, 16:17, 21:6, 21:7, 22:5
couple [4] - 4:16, 5:22, 15:4, 22:24
course [4] - 13:23, 16:25, 19:10, 23:10
Court [19] - 2:19, 2:19, 7:15, 8:5, 10:12, 12:10, 12:13, 13:1, 13:24, 15:21, 16:13, 19:3, 19:20, 21:5, 21:24, 22:11, 23:25, 24:10, 25:10
COURT [47] - 1:1, 3:9,

3:13, 3:18, 3:21, 4:1, 4:4, 4:9, 4:14, 6:4, 6:16, 6:22, 7:3, 12:8, 13:5, 13:10, 14:1, 14:4, 15:16, 16:8, 17:2, 17:8, 17:11, 17:20, 18:16, 18:20, 18:22, 19:4, 19:23, 20:9, 20:15, 20:17, 20:24, 21:10, 21:13, 21:16, 21:20, 21:22, 22:12, 22:17, 22:22, 23:8, 23:11, 24:3, 24:5, 24:9, 25:1
court [3] - 12:20, 12:22, 14:8
Court's [1] - 12:18
Courthouse [1] - 2:20
COURTROOM [1] - 3:2
courts [1] - 7:15
CRC [2] - 2:19, 25:9
crime [1] - 18:3
Criminal [3] - 1:2, 2:3, 3:3
criminal [2] - 7:16, 7:25
CRR [2] - 2:19, 25:9
cut [1] - 6:10

**D**

D.C [8] - 1:5, 8:4, 8:16, 8:23, 11:6, 11:14, 13:13, 25:11
Dated [1] - 25:7
dates [1] - 19:14
days [1] - 19:1
DC [4] - 1:14, 1:20, 2:4, 2:21
deadlines [2] - 19:15, 19:22
dealing [3] - 10:9, 14:21, 15:16
deals [1] - 6:14
dealt [2] - 11:5, 11:6
decades [1] - 6:13
decide [3] - 5:24, 13:15, 20:22
decided [1] - 10:4
deciding [1] - 16:14
decision [4] - 8:10, 10:23, 16:17, 22:24
decisions [3] - 7:20, 22:18, 23:3
Defendant [5] - 1:15, 1:18, 2:2, 3:11, 21:18
defendant [11] - 7:25, 8:2, 8:7, 8:11, 8:12,

8:17, 8:24, 9:2, 9:5, 22:6
defendant's [1] - 10:17
defendants [3] - 3:22, 10:21, 12:6
Defendants [1] - 1:7
defendants' [1] - 13:11
defense [3] - 5:24, 13:5, 13:19
Defense [1] - 2:3
defer [1] - 13:18
definition [4] - 11:10, 11:15, 11:16, 13:15
denied [2] - 10:15, 10:19
deny [3] - 7:4, 13:11, 16:11
department [3] - 21:25, 22:7, 23:21
DEPUTY [1] - 3:2
designation [1] - 23:17
destruction [1] - 20:6
detail [1] - 18:13
determining [2] - 15:21, 16:9
different [3] - 14:12, 17:6, 17:25
direct [1] - 24:9
directed [4] - 11:9, 15:7, 15:20
directly [1] - 11:8
disappointed [1] - 10:2
discretion [3] - 7:19, 7:23, 8:9
discussed [1] - 12:12
discussion [1] - 12:6
discussions [1] - 9:12
dismiss [11] - 4:24, 10:13, 10:17, 10:19, 12:25, 13:11, 15:5, 15:10, 15:11, 17:13, 21:6
dismissed [2] - 11:3, 16:18
dismissing [3] - 11:19, 16:3, 16:12
disputes [1] - 17:24
DISTRICT [3] - 1:1, 1:1, 1:9
Docket [5] - 4:23, 7:4, 10:13, 10:16, 11:25
double [2] - 18:21, 19:8
double-check [2] - 18:21, 19:8
down [1] - 12:21

Drive [1] - 1:22
due [1] - 7:24

**E**

easier [1] - 22:9
ECF [1] - 19:19
effect [1] - 18:15
either [4] - 11:20, 12:13, 13:15, 16:10
ELIZABETH [1] - 1:12
email [2] - 18:10, 23:7
emailing [1] - 24:1
encourage [1] - 20:5
enforce [1] - 7:20
enforcement [2] - 7:16, 17:25
enter [3] - 5:4, 5:5, 14:21
entire [1] - 15:11
entirely [4] - 7:23, 17:23, 18:4, 20:2
error [1] - 12:11
essentially [2] - 6:7, 22:4
event [3] - 7:14, 10:24, 19:25
events [2] - 14:18, 19:10
evidence [11] - 7:21, 8:13, 8:14, 8:24, 9:2, 9:3, 9:8, 9:9, 10:6, 17:16, 20:6
examination [1] - 15:1
except [1] - 6:24
exchange [1] - 18:10
excluding [1] - 14:17
executive [4] - 7:17, 18:1, 18:6, 20:5
exercise [1] - 8:9
exercising [1] - 8:3
exist [1] - 14:17
expected [1] - 10:1
expecting [1] - 17:3
extends [2] - 17:22, 20:2
extent [9] - 5:20, 7:11, 7:13, 10:20, 11:2, 11:9, 16:1, 16:8, 17:25
extraordinary [2] - 19:20, 19:22

**F**

F.2d [1] - 8:16
F.3d [2] - 7:22, 8:22
fact [5] - 5:15, 5:21, 7:8, 16:6, 18:25
facts [4] - 5:7, 8:18,

8:20, 13:3
factual [4] - 5:1, 5:17, 7:6, 17:4
factually [2] - 5:9, 7:9
fails [1] - 7:14
fair [2] - 11:11, 12:2
far [1] - 14:14
FBI [1] - 18:2
federal [1] - 7:15
felt [2] - 12:22, 12:23
Fifth [1] - 7:24
figuring [1] - 11:22
file [3] - 20:11, 20:17, 24:9
filed [9] - 4:6, 5:6, 5:7, 6:25, 7:5, 9:11, 12:15, 18:25
filing [4] - 8:1, 19:5, 19:24
filings [1] - 19:21
fine [5] - 12:8, 20:17, 20:19, 23:11, 24:13
firm [1] - 5:12
First [4] - 15:5, 15:10, 15:20, 16:19
first [3] - 6:25, 8:12, 15:6
fischer [2] - 11:7, 13:13
Floor [1] - 1:16
focuses [1] - 11:1
focusing [1] - 18:11
fold [1] - 6:9
following [1] - 5:22
FOR [1] - 1:1
foregoing [1] - 25:4
form [1] - 14:7
former [1] - 15:15
forth [2] - 5:20, 20:8
forward [2] - 9:1, 22:5
Fox [1] - 19:13
frame [1] - 5:13
frankly [1] - 18:6
Friday [2] - 20:14, 23:24
Friedrich [1] - 14:13
frontal [1] - 19:15
full [1] - 25:5
fullback [1] - 23:17
fundamental [1] - 5:1
future [1] - 13:15

**G**

GARY [1] - 1:6
Gary [3] - 2:2, 3:4, 3:20
glad [1] - 12:9
government [26] - 3:6,

5:3, 5:6, 5:7, 6:5,
6:10, 6:22, 7:7, 8:22,
9:1, 9:3, 9:10, 9:18,
10:1, 10:7, 13:7,
14:2, 17:6, 17:21,
17:23, 18:5, 18:23,
20:3, 22:4, 23:19
**government's** [2] -
5:14, 7:1
**grand** [2] - 10:10,
10:11
**great** [3] - 4:14, 21:15,
24:12
**grounds** [6] - 15:5,
15:10, 15:12, 16:11,
16:19, 20:10
**guess** [1] - 5:9
**guilty** [1] - 9:19

## H

**handle** [2] - 12:6,
13:22
**happy** [5] - 4:21,
11:20, 17:1, 18:14,
18:18
**head** [1] - 19:9
**hear** [3] - 4:21, 11:12,
12:9
**heard** [2] - 18:3, 20:1
**HEARING** [2] - 1:4,
1:8
**hearing** [4] - 17:4,
17:10, 21:24, 24:20
**HEARING-VIA** [1] -
1:4
**HELD** [1] - 1:9
**helpful** [2] - 18:15,
23:1
**hereby** [2] - 10:15,
25:3
**Hills** [1] - 1:17
**hinted** [1] - 7:13
**Honor** [47] - 3:2, 3:7,
3:10, 3:14, 3:16,
3:19, 3:24, 4:6, 4:11,
5:11, 5:15, 6:1, 6:8,
6:15, 6:21, 6:24,
12:5, 12:7, 12:9,
13:9, 13:21, 14:3,
15:14, 16:7, 16:23,
16:25, 17:10, 17:19,
18:9, 18:19, 18:24,
19:1, 19:8, 19:18,
20:8, 21:4, 21:19,
21:21, 21:23, 22:15,
23:6, 23:17, 24:16,
24:17, 24:18, 24:19
**HONORABLE** [1] - 1:9
**hopefully** [2] - 22:8,

22:25
**House** [2] - 17:17,
19:11
**Houston** [1] - 1:23
**Howell** [2] - 14:10

## I

**identifying** [1] - 14:16
**immediate** [1] - 5:25
**immediately** [2] -
6:10, 9:19
**IN** [1] - 1:1
**inaccuracy** [1] - 5:17
**included** [2] - 9:11,
10:11
**increased** [2] - 8:1,
8:7
**indeed** [2] - 10:2, 21:6
**indicate** [2] - 8:18,
8:20
**indicated** [1] - 22:4
**indictment** [11] - 4:24,
6:18, 6:19, 6:25,
8:20, 9:11, 10:10,
10:14, 15:12, 16:4,
16:12
**individuals** [1] - 6:9
**infer** [1] - 9:13
**inform** [1] - 21:24
**information** [3] - 9:20,
22:3, 22:7
**initial** [2] - 5:22, 10:8
**inquire** [1] - 21:25
**insofar** [1] - 6:24
**instances** [1] - 6:8
**instead** [2] - 10:6,
16:13
**instructions** [4] -
11:21, 11:22, 16:5,
16:14
**instrument** [2] - 9:24,
10:3
**intend** [1] - 21:10
**interpretation** [1] -
12:17
**introduce** [1] - 3:5
**investigate** [2] - 10:8,
17:17
**investigated** [1] - 18:2
**involved** [2] - 5:12,
21:8
**involving** [1] - 10:24
**issuance** [1] - 12:18
**issue** [12] - 4:7, 10:23,
11:8, 12:3, 12:18,
13:8, 14:4, 14:7,
14:14, 14:22, 14:24,
15:2
**issues** [3] - 20:22,

20:24, 22:18
**itself** [1] - 11:1

## J

**Jackson** [1] - 14:9
**January** [2] - 14:19,
17:18
**JOHN** [1] - 1:15
**John** [2] - 1:15, 3:10
**joint** [2] - 24:5, 24:10
**JR** [1] - 1:18
**Judge** [18] - 11:7,
11:8, 11:15, 14:8,
14:9, 14:10, 14:11,
14:12, 14:13, 17:19,
20:14, 21:9, 22:21
**JUDGE** [2] - 1:9, 1:9
**judges** [2] - 14:8,
14:13
**jurors** [1] - 14:17
**jury** [11] - 10:10,
10:11, 11:21, 11:22,
12:13, 13:16, 14:15,
16:4, 16:14, 23:14
**justification** [2] - 9:6,
19:5
**justified** [1] - 8:8

## K

**keep** [1] - 5:18
**Kelly** [2] - 3:8, 14:8
**KELLY** [1] - 1:12
**kind** [1] - 6:12
**knowledge** [1] - 15:25
**Knowlton** [4] - 1:18,
3:4, 3:15, 4:2
**KNOWLTON** [1] - 1:6
**knows** [1] - 5:12

## L

**Lamberth** [1] - 14:11
**last** [2] - 18:10, 21:24
**late** [4] - 19:1, 19:5,
19:21, 19:24
**latter** [1] - 15:12
**law** [7] - 7:14, 7:20,
12:14, 13:3, 15:21,
15:23, 17:25
**Law** [3] - 1:15, 1:18,
1:21
**lawful** [1] - 9:3
**laws** [1] - 7:17
**least** [3] - 5:20, 11:13,
17:5
**legal** [2] - 8:3, 8:15
**light** [1] - 13:10
**likelihood** [1] - 8:19

**likely** [1] - 8:20
**limits** [2] - 7:23, 19:6
**list** [2] - 10:16, 21:13
**litigation** [1] - 17:24
**live** [1] - 5:19
**LLP** [1] - 2:2
**look** [4] - 14:5, 14:20,
15:3, 15:21
**looked** [1] - 5:13
**looking** [1] - 15:23
**Loudermilk** [1] - 19:14

## M

**maintained** [1] - 17:16
**map** [1] - 9:16
**matter** [1] - 16:13
**matters** [1] - 22:25
**MAYR** [6] - 1:21, 12:9,
21:23, 23:16, 24:7,
24:16
**Mayr** [7] - 1:21, 3:15,
12:5, 12:8, 13:6,
21:22, 23:12
**McFadden** [1] - 14:9
**Meadows** [1] - 8:22
**mean** [5] - 11:10, 14:6,
18:16, 20:20, 23:23
**meaning** [1] - 11:2
**meet** [1] - 24:12
**Mehta** [1] - 14:10
**Memorial** [1] - 1:22
**mentioned** [2] - 22:18
**meritorious** [1] -
19:25
**merits** [5] - 7:13, 19:2,
20:11, 20:12, 20:18
**Meyer** [1] - 8:16
**might** [2] - 14:17, 17:6
**minute** [1] - 19:21
**misconception** [1] -
7:6
**misdemeanors** [2] -
5:22, 6:13
**missed** [1] - 12:1
**mistaken** [4] - 7:10
**MONTGOMERY** [1] -
1:5
**Montgomery** [12] -
1:15, 3:4, 3:11, 3:23,
3:24, 5:4, 5:24, 6:11,
7:7, 9:19, 10:1,
21:18
**Montgomery's** [4] -
4:24, 9:15, 10:13,
17:13
**month** [1] - 24:6
**Moran** [1] - 3:8
**MORAN** [2] - 1:12,
6:24

**MOSS** [1] - 1:9
**motion** [36] - 4:24,
5:2, 5:10, 5:19, 6:3,
6:5, 6:14, 7:4, 7:5,
7:10, 7:12, 7:14,
10:13, 10:17, 10:19,
10:20, 11:1, 11:3,
11:9, 12:16, 12:25,
13:11, 13:18, 15:5,
15:6, 15:16, 16:8,
16:20, 16:22, 17:4,
17:13, 17:15, 19:24,
21:6
**motions** [3] - 4:17,
4:19, 21:14
**motivation** [1] - 9:2
**mount** [1] - 5:24
**move** [1] - 22:5
**moving** [1] - 11:25
**MR** [26] - 3:10, 3:14,
3:24, 4:3, 5:11, 6:7,
6:21, 12:5, 12:9,
13:21, 15:14, 16:7,
17:19, 18:9, 18:18,
18:21, 19:7, 20:7,
21:18, 21:21, 21:23,
23:16, 24:7, 24:16,
24:17, 24:18
**MS** [25] - 3:7, 3:19,
4:6, 4:11, 6:24, 13:9,
14:3, 16:23, 17:5,
17:9, 18:24, 19:18,
20:14, 20:16, 20:23,
21:4, 21:12, 21:15,
22:15, 22:21, 23:6,
23:10, 24:4, 24:8,
24:19
**must** [1] - 9:5

## N

**N.W** [1] - 25:11
**nation's** [1] - 7:16
**necessary** [2] - 4:19,
4:21
**need** [6] - 17:3, 17:9,
23:23, 24:1, 24:2,
24:12
**needed** [1] - 12:24
**negotiations** [3] -
5:16, 5:25, 6:6
**never** [3] - 12:21, 18:3,
20:1
**Nevin** [4] - 3:8, 17:8,
18:22, 20:9
**NEVIN** [18] - 1:12, 3:7,
13:9, 14:3, 17:9,
18:24, 19:18, 20:14,
20:16, 20:23, 21:4,
21:12, 21:15, 22:21,

23:6, 23:10, 24:4, 24:8
**News** [1] - 19:13
**next** [5] - 10:16, 16:20, 22:19, 22:24, 24:1
**nice** [1] - 24:14
**note** [1] - 14:23
**noted** [1] - 9:10
**notes** [1] - 25:5
**notice** [1] - 15:24
**notion** [2] - 5:3, 7:6
**November** [2] - 23:24, 24:11
**NW** [4] - 1:13, 1:19, 2:3, 2:20

## O

**objective** [3] - 8:14, 9:1, 15:25
**obligations** [1] - 17:22
**observed** [1] - 7:15
**obtained** [1] - 10:10
**obviously** [2] - 7:19, 10:18
**occurred** [2] - 9:7, 19:11
**occurrence** [1] - 9:23
**October** [2] - 1:6, 25:7
**OF** [4] - 1:1, 1:2, 1:8, 25:1
**offer** [4] - 6:20, 8:12, 9:13, 9:24
**offered** [1] - 7:8
**offering** [1] - 8:13
**offers** [1] - 8:24
**Office** [1] - 1:13
**office** [1] - 22:13
**Official** [2] - 2:19, 25:10
**OFFICIAL** [1] - 25:1
**once** [3] - 20:21, 23:20, 23:21
**one** [16] - 4:25, 7:12, 8:12, 9:13, 10:16, 11:13, 12:17, 13:19, 13:22, 14:7, 15:2, 16:20, 18:23, 21:7, 23:14
**open** [1] - 11:12
**opinion** [3] - 11:6, 12:19, 14:23
**opinions** [1] - 11:8
**opposition** [2] - 5:14, 18:25
**oral** [2] - 21:3, 21:4
**order** [5] - 8:2, 8:14, 14:5, 14:21, 19:21
**original** [2] - 10:3, 12:18

otherwise [1] - 13:24
outside [1] - 19:5
Oxnard [1] - 1:16

## P

**P.C** [2] - 1:15, 1:21
**p.m** [2] - 1:6, 24:20
**page** [1] - 12:10
**Pan** [1] - 11:7
**papers** [5] - 7:2, 13:25, 17:12, 18:17, 18:18
**part** [4] - 5:17, 8:21, 12:10, 12:11
**particular** [2] - 14:18, 15:23
**parties** [6] - 4:18, 11:12, 11:20, 12:1, 13:17, 24:9
**PATRICK** [1] - 1:5
**Patrick** [3] - 1:15, 3:4, 3:11
**penalize** [1] - 8:8
**pending** [4] - 4:17, 5:15, 11:14, 22:25
**Perry** [1] - 8:4
**person** [2] - 4:12, 13:19
**PIERCE** [17] - 1:15, 3:10, 3:24, 5:11, 6:7, 6:21, 12:5, 15:14, 16:7, 17:19, 18:9, 18:18, 18:21, 19:7, 20:7, 21:18, 24:18
**Pierce** [13] - 1:15, 3:10, 3:23, 5:1, 7:11, 12:4, 15:5, 17:18, 17:20, 19:4, 20:4, 21:14, 21:16
**Pierce's** [1] - 9:17
**piled** [1] - 6:5
**piling** [1] - 5:21
**place** [2] - 5:16, 9:12
**Plaintiff** [2] - 1:3, 1:12
**plea** [18] - 5:4, 5:5, 5:8, 5:16, 5:25, 6:6, 6:10, 6:19, 7:8, 9:12, 9:13, 9:15, 9:24, 22:1, 22:10
**plead** [3] - 6:17, 9:19, 10:3
**pleading** [1] - 6:19
**pleads** [1] - 9:24
**PLLC** [1] - 1:18
**point** [8] - 6:15, 8:25, 9:5, 11:11, 13:25, 15:12, 16:23, 22:20
**portion** [2] - 15:19, 16:3

position [3] - 7:1, 18:24, 21:14
possessed [1] - 17:16
possession [1] - 18:2
possibly [1] - 9:13
potential [1] - 14:16
potentially [1] - 6:13
power [1] - 18:7
pre [2] - 22:1, 22:10
pre-plea [2] - 22:1, 22:10
prefers [1] - 19:3
prejudice [1] - 14:17
premised [3] - 5:2, 16:18, 17:15
prepared [1] - 13:24
preparing [1] - 16:14
present [3] - 3:11, 3:16, 3:20
presented [2] - 12:22, 15:13
presentence [1] - 22:9
preservation [1] - 17:22
preserve [2] - 10:20, 10:21
preserved [2] - 10:22, 10:25
preserving [1] - 12:11
presumed [1] - 7:20
presumption [4] - 8:18, 8:25, 9:10, 9:22
pretextual [1] - 9:6
pretty [2] - 10:6, 23:22
previously [1] - 13:12
Price [1] - 2:2
prison [1] - 6:14
probation [4] - 21:25, 22:7, 22:13, 23:21
proceed [3] - 3:22, 5:25, 21:7
proceedings [1] - 25:6
process [2] - 7:24, 14:15
produces [1] - 9:3
prohibits [1] - 8:1
promptly [3] - 14:21, 16:17, 21:11
proper [2] - 7:20, 8:9
proposition [1] - 17:21
prosecution [4] - 5:24, 7:25, 8:6, 8:12
prosecutor [1] - 8:14
prosecutorial [1] - 8:9
prosecutors [2] - 7:19, 8:1
protect [1] - 7:25

prove [1] - 9:5
provide [2] - 16:12, 22:1
provided [5] - 13:12, 13:13, 16:24, 22:2, 22:7
provides [2] - 11:18, 14:16
province [1] - 7:17
PSR [3] - 22:2, 22:10
punish [1] - 8:14
purposes [5] - 6:2, 11:24, 15:21
put [2] - 20:7, 22:22, 23:8, 23:23

## Q

quarterbacking [1] - 23:12
questions [4] - 4:16, 13:23, 15:4, 16:25
quickly [5] - 6:9, 6:10, 23:22
quote [1] - 8:10
quoting [1] - 8:4

## R

raise [4] - 10:22, 12:24, 21:1, 21:17
raising [1] - 16:2
RANDOLPH [1] - 1:9
rare [1] - 9:23
rather [2] - 22:5, 23:9
reached [1] - 21:25
read [1] - 15:7
reading [1] - 5:14
ready [1] - 13:23
realistic [1] - 8:19
really [3] - 11:9, 16:3, 21:23
reason [3] - 4:13, 9:25, 19:4
reasons [3] - 10:12, 13:12
recognize [1] - 13:14
recognized [1] - 7:16
record [3] - 3:3, 3:5, 6:2
refined [1] - 7:11
refusal [1] - 9:15
refused [2] - 5:4, 5:5
rejected [3] - 5:8, 7:8, 9:13
related [1] - 15:18
relatively [1] - 16:16
rely [6] - 7:2, 8:17, 13:24, 16:24, 18:16, 18:18

remotely [1] - 4:13
report [2] - 24:6, 24:10
Reporter [3] - 2:19, 2:19, 25:10
REPORTER [1] - 25:1
Representatives [1] - 17:17
request [2] - 21:2, 21:8
requesting [1] - 21:4
require [1] - 15:24
respect [13] - 9:17, 10:21, 10:23, 12:3, 13:15, 13:18, 15:15, 16:17, 17:4, 17:13, 19:10, 19:15, 23:13
respond [2] - 6:23, 19:2
response [2] - 19:19, 20:11
restriction [1] - 15:25
retaliate [1] - 8:2
retaliated [1] - 5:3
retaliating [1] - 6:18
retaliation [2] - 4:25, 10:14
retaliatory [1] - 5:23
review [1] - 18:12
revisiting [1] - 13:2
rights [2] - 8:15, 10:21
rise [2] - 9:9, 9:21
RMR [2] - 2:19, 25:9
road [1] - 12:21
Ron [1] - 13:21
RONALD [1] - 1:18
Ronald [2] - 1:18, 3:14
Room [2] - 2:20, 25:10
rule [1] - 20:10
ruled [2] - 6:3, 21:5
ruling [2] - 21:8, 21:10
rulings [1] - 23:20

## S

Santos [1] - 14:25
satisfying [1] - 9:21
schedule [3] - 4:20, 21:2, 23:22
scheduled [1] - 22:20
second [2] - 4:9, 8:20
Section [5] - 10:18, 10:19, 11:19, 15:7, 15:8
see [2] - 3:16, 23:21
seeking [2] - 15:9, 15:11
seeks [1] - 11:14
Sefranek [3] - 2:19, 25:9, 25:9
SEFRANEK [1] - 25:3

**Select** [2] - 17:17, 19:11
**selection** [1] - 14:15
**sense** [1] - 24:6
**separate** [3] - 17:23, 18:4, 20:2
**set** [1] - 5:20
**severe** [1] - 10:4
**shifts** [2] - 9:1, 9:4
**short** [1] - 20:11
**show** [1] - 8:7
**showing** [1] - 8:11
**simply** [9] - 5:20, 9:16, 9:18, 9:24, 10:3, 10:4, 10:20, 12:15
**Slatten** [3] - 7:22, 8:3, 8:10
**slightly** [1] - 14:12
**solely** [1] - 8:8
**someone** [1] - 8:6
**sometime** [1] - 23:24
**soon** [1] - 20:21
**sooner** [2] - 22:25, 23:3
**sorry** [5] - 3:16, 18:10, 19:16, 22:10, 24:4
**sort** [4] - 5:1, 5:12, 5:21, 6:9
**sounds** [1] - 24:7
**special** [1] - 7:17
**spoliation** [1] - 17:14
**sponte** [1] - 10:3
**stand** [1] - 12:2
**standard** [4] - 11:23, 16:5, 16:9, 16:15
**standards** [1] - 9:21
**standing** [1] - 8:15
**start** [2] - 4:23, 12:4
**starting** [1] - 3:6
**state** [1] - 15:23
**STATES** [3] - 1:1, 1:2, 1:9
**States** [9] - 1:13, 2:20, 3:3, 3:8, 3:18, 7:18, 7:22, 8:16, 8:22, 13:13
**status** [8] - 4:15, 21:24, 22:19, 23:2, 23:5, 24:2, 24:5, 24:10
**STATUS** [2] - 1:4, 1:8
**statutes** [3] - 15:22, 15:24, 16:11
**stenographic** [1] - 25:5
**still** [6] - 5:10, 5:18, 5:23, 6:2, 8:10
**stipulated** [2] - 21:7, 23:14
**Street** [4] - 1:13, 1:16, 1:19, 2:3

**sua** [1] - 10:3
**subjective** [1] - 15:24
**submit** [1] - 18:14
**submitted** [1] - 14:6
**subsequently** [1] - 10:10
**substance** [1] - 15:6
**succeed** [1] - 8:6
**sufficient** [2] - 8:24, 14:16
**sufficiently** [1] - 10:2
**suggest** [4] - 15:23, 20:20, 23:8, 24:5
**suggestion** [2] - 18:4, 20:2
**suggests** [1] - 11:3
**Suite** [3] - 1:19, 1:22, 2:4
**SULLIVAN** [6] - 1:18, 3:14, 4:3, 13:21, 21:21, 24:17
**Sullivan** [5] - 1:18, 3:14, 4:1, 13:21, 21:20
**summary** [1] - 12:2
**superseding** [3] - 4:24, 10:13, 15:11
**supplemental** [2] - 12:15, 18:14
**support** [1] - 8:24
**supports** [1] - 17:21
**suppress** [1] - 16:21
**Supreme** [2] - 7:15, 8:5
**surveys** [1] - 14:6
**suspect** [1] - 19:24
**suspicion** [1] - 19:17

# T

**TAMARA** [1] - 25:3
**Tamara** [3] - 2:19, 25:9, 25:9
**Team** [1] - 2:3
**ten** [1] - 6:13
**terms** [1] - 12:10
**THE** [49] - 1:1, 1:1, 1:9, 3:2, 3:9, 3:13, 3:18, 3:21, 4:1, 4:4, 4:9, 4:14, 6:4, 6:16, 6:22, 7:3, 12:8, 13:5, 13:10, 14:1, 14:4, 15:16, 16:8, 17:2, 17:8, 17:11, 17:20, 18:16, 18:20, 18:22, 19:4, 19:23, 20:9, 20:15, 20:17, 20:24, 21:10, 21:13, 21:16, 21:20, 21:22, 22:12, 22:17, 22:22, 23:8,

23:11, 24:3, 24:5, 24:9
**then-Chief** [1] - 14:10
**third** [1] - 15:11
**THOMAS** [1] - 1:21
**timeline** [1] - 9:15
**timeliness** [1] - 20:10
**timely** [1] - 20:21
**timing** [1] - 23:13
**tip** [1] - 19:15
**today** [10] - 3:22, 3:25, 4:20, 5:13, 18:11, 20:15, 20:18, 20:25, 21:2, 21:17
**together** [1] - 20:22
**took** [2] - 5:16, 9:12
**top** [1] - 19:9
**TRANSCRIPT** [1] - 1:8
**transcript** [2] - 25:4, 25:6
**trespass** [1] - 15:23
**trial** [9] - 11:21, 11:23, 11:24, 12:13, 12:14, 12:22, 21:7, 23:14
**trier** [1] - 16:6
**true** [2] - 25:4, 25:5
**two** [6] - 4:7, 6:12, 8:12, 15:22, 16:10, 23:2
**TX** [1] - 1:23

# U

**U.S** [2] - 11:7, 17:17
**U.S.C** [2] - 15:7, 15:8
**ultimately** [1] - 16:6
**unconstitutional** [2] - 4:25, 10:14
**UNITED** [3] - 1:1, 1:2, 1:9
**United** [9] - 1:13, 2:20, 3:3, 3:8, 3:18, 7:18, 7:21, 8:15, 8:22, 13:13
**unless** [1] - 16:25
**untimely** [1] - 7:12
**up** [6] - 10:16, 11:20, 16:13, 16:20, 17:11, 20:21
**upping** [1] - 8:1

# V

**vagueness** [1] - 11:4
**Vargas** [1] - 14:25
**venue** [2] - 13:18, 14:15
**version** [1] - 14:12
**via** [1] - 3:20
**VIA** [1] - 1:4, 1:8
**video** [2] - 3:12, 3:16

**vindictive** [4] - 5:23, 7:25, 8:6, 8:11
**vindictively** [1] - 9:18
**vindictiveness** [11] - 8:13, 8:18, 8:19, 8:21, 8:25, 9:7, 9:9, 9:10, 9:14, 9:22, 10:5
**violation** [4] - 15:22, 16:10, 17:14, 17:15
**vs** [1] - 1:4

# W

**wait** [1] - 23:25
**waiver** [2] - 4:7, 4:11
**Walker's** [1] - 11:8, 11:15
**wants** [2] - 14:2, 18:23
**Washington** [6] - 1:5, 1:14, 1:20, 2:4, 2:21, 25:11
**ways** [1] - 8:12
**week** [4] - 4:7, 20:15, 20:18, 24:1
**weekend** [1] - 24:15
**weeks** [2] - 22:24, 23:2
**welcome** [1] - 10:22
**whatnot** [1] - 5:25
**WILSON** [1] - 1:6
**Wilson** [5] - 2:2, 3:4, 3:20, 4:5, 4:6
**Wilson's** [1] - 16:20
**wise** [1] - 22:12
**Woodland** [1] - 1:17
**word** [5] - 11:1, 11:2, 11:4, 11:10, 12:3
**world** [1] - 9:25
**worry** [1] - 12:20
**wrestle** [1] - 11:15

# Y

**you-all** [3] - 16:16, 21:1, 23:1
**yourselves** [4] - 3:5, 23:4, 23:9, 24:13

# Z

**ZOOM** [2] - 1:4, 1:8
**Zoom** [3] - 3:20, 3:22, 3:25